A06A1435. THE CUPBOARD, LLC et al. v. SUNSHINE TRAVEL CENTER.

(640 SE2d 584)

SMITH, Presiding Judge.

Russell Wallace and The Cupboard, LLC ("Cupboard") appeal from the trial court's order granting partial summary judgment in favor of Sunshine Travel Center ("Sunshine Travel"). The only issue on appeal is Wallace's liability as a guarantor of Cupboard's obligations under a lease with Sunshine Travel. For the reasons set forth below, we affirm the trial court's grant of partial summary judgment in part, and reverse in part.

On appeal, this court reviews

the trial court's grant of summary judgment de novo to determine whether the evidence of record, viewed in a light most favorable to the nonmoving party, demonstrates any genuine issue of material fact. Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

(Citation omitted.) *Columbus Clinic v. Liss,* 252 Ga. App. 559, 562 (556 SE2d 215) (2001). Viewed in this light, the record shows that on June 23, 2003, Wallace signed an open-ended written guaranty for all current and future debts owed by Cupboard to Sunshine Travel. The written guaranty provided:

This is a continuing guaranty. Notice of acceptance is waived by Guarantor. It shall remain in full force until Guarantor delivers to the Creditor written notice revoking it as to

---

another tenant had fallen through a bathroom floor because of similar plumbing problems).

indebtedness incurred subsequent to such delivery. Such revocation shall not affect the Guarantor's obligations hereunder with respect to the guarantee of payment of all indebtedness that is incurred prior to the date of receipt of said notice by Creditor.

One month later, Sunshine Travel assigned to Cupboard its interest as purchaser in a fuel requirements supply agreement with Citgo. The previously executed guaranty listed a "fuel supply or fuel marketing agreement" as an example of a future obligation that Wallace would guarantee on behalf of Cupboard.

On August 18, 2003, Sunshine Travel and Cupboard entered into a written commercial lease contract for a restaurant, convenience store, and gasoline sales facility. A typed provision of the lease under the heading "Miscellaneous" provided:

It is understood by both parties that Tenant is executing a personal guaranty in conjunction with this lease. At any time Tenant m[a]y revoke said personal guaranty at Tenant's sole discretion. Should Tenant decide to revoke said personal guaranty Tenant will submit this request in writing to Landlord along with a Security Deposit of $35,000. Said Security Deposit shall be subject to all terms and conditions of this lease, specifically Paragraph 23.[1]

The lease designated Cupboard as its tenant and defined the term tenant to include Cupboard's representatives, as well as any individual "as may fit the particular parties." The lease required Cupboard to pay to Sunshine Travel an initial monthly rent of $12,000 that increased over the life of the ten-year lease, a percentage of its gross sales, and $200,000 for the goodwill of the existing business.

In November 2004, Sunshine Travel filed suit against Cupboard and Wallace based on Cupboard's failure to pay rent beginning in October 2004, abandonment of the leased premises, failure to pay utilities, damage to the property, removal of fixtures, and failure to pay $200,000 for the goodwill of the business. After conducting minimal written discovery, the parties filed cross-motions for summary judgment on the issue of liability. Wallace asserted that he was not liable as a guarantor because he tendered a $35,000 check to Sunshine Travel and revoked the guaranty on August 10, 2005. Sunshine Travel asserted that it was undisputed that Cupboard

---

[1] Paragraph 23 outlines the landlord's obligations with regard to any security deposit paid by the tenant.

violated the lease and that Wallace remained personally liable for all obligations owed before his revocation of the guaranty.

The trial court ruled "that the language of the Lease and the Guaranty regarding revocation of Defendant Wallace's personal guaranty are [sic] unambiguous and are not inconsistent with each other; therefore, both provisions should be upheld." It then found that

> Defendant Wallace remains personally liable for Defendant Cupboard's indebtedness under the Lease and under the Assignment that was incurred before August 10, 2005, but that Defendant Wallace's liability shall be limited to the $35,000 deposit for Defendant Cupboard's indebtedness incurred after August 10, 2005.

On appeal, Wallace asserts that the trial court should have concluded that the unambiguous language of the lease and the guaranty mandates that his liability is limited to the $35,000 security deposit. According to Wallace,

> the [g]uaranty was given as a substitute for a security deposit so that the Tenant was not without the use of funds during the term of the Lease, and yet the Landlord could be secure in the receipt of the Security Deposit if and when needed because of the tremendous penalty under the personal Guaranty if the Security Deposit were not paid.

Wallace, however, fails to point to any evidence in the record with regard to the parties' intent when they executed the lease or the guaranty, and we have found none. We have no evidence before us other than the contents of the guaranty and the lease.

"The cardinal rule of contract construction is to ascertain the intent of the parties at the time they entered the agreement." (Citation omitted.) *Dept. of Transp. v. Hardin-Sunbelt*, 266 Ga. App. 139, 144 (1) (596 SE2d 397) (2004). "In determining such intention the courts must first look to the language of the instrument and, if that language be clear, the courts need look no further in ascertaining such intention." (Citation and punctuation omitted.) *Cowen v. Snellgrove*, 169 Ga. App. 271, 273 (2) (312 SE2d 623) (1983).

In this case, the language of the guaranty, standing alone, is unambiguous and creates an unconditional, continuing guaranty. See *White v. Chapman*, 149 Ga. App. 409, 411 (1) (254 SE2d 434) (1979). The lease, which was executed almost two months later, states that "[i]t is understood by both parties that Tenant *is executing* a personal guaranty *in conjunction with* this lease." (Emphasis

supplied.) American Heritage Dictionary, 2nd college ed., defines "conjunction" as "a simultaneous occurrence in space or time," or "the act of joining."

A close examination of the lease reveals that the continuous, unconditional guaranty executed by Wallace two months earlier was never incorporated into the lease by reference and was not attached to the lease or made an exhibit.[2] Based upon the usual and common meaning of the word "conjunction," the lease language cannot be construed to limit or modify Wallace's pre-existing obligations under the separate guaranty because it was not "execut[ed] . . . in conjunction with" the lease. Wallace's right to revoke the guaranty therefore is governed solely by the guaranty. While the parties may have intended for the lease to modify the revocation provisions of the pre-existing guaranty, the plain language of the lease does not reflect that intent, and we are bound by the language they employed. See *Avec Corp. v. Schmidt*, 207 Ga. App. 374, 376 (427 SE2d 850) (1993). And we reiterate that the record before us contains no evidence of the parties' intent when they entered into the guaranty and the lease.

As a result, we affirm the trial court's grant of partial summary judgment to Sunshine Travel on the issue of Wallace's liability under the guaranty through the time of his revocation. We must, however, reverse the portion of the trial court's order concluding that the $35,000 security deposit can only be used to satisfy Wallace's liability arising after the revocation, because this conclusion was grounded on the trial court's application of the lease language to the guaranty.

*Judgment affirmed in part and reversed in part. Ruffin, C. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 6, 2006 —
RECONSIDERATION DENIED DECEMBER 15, 2006 —

*Cummings, Kelley & Bishop, Thomas S. Bishop*, for appellants.
*Mills & Moss, Steven M. Mills*, for appellee.

---

[2] The record before us does not include any other guaranty that may have been executed at the same time as the lease.